### THE JOHN I. CLARK.

#### (District Court, E. D. Virginia. October 24, 1912.)

COLLISION (§ 102*)—STEAM VESSEL COMING OUT FROM SLIP AND PASSING VESSEL—MUTUAL FAULTS.

A tug coming out of a slip into the Elizabeth river at Norfolk in the daytime, immediately in front of the adjoining pier and about 80 or 100 feet therefrom, came into collision with and sunk a small gasoline sloop, which was passing down the river heavily loaded. The sloop was seen when 200 feet away, and could have been seen at a greater distance if an efficient lookout had been maintained; also the sloop could have kept at a greater distance from the piers, from the slips between which other vessels were likely to come out at any time. *Held*, that the case was one where the ordinary navigation rules did not apply, but was governed by the "special circumstance" rule, and that both vessels were in fault for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

, failure to exercise proper care, by which either could have avoided the collision.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 102.*

Collision, overtaking vessels, see note to The Rebecca, 60 C. C. A. 254.]

In Admiralty. Suit for collision by J. F. Burns, master of the gasoline sloop William M. Brittain, against the steam tug John I. Clark. Decree for libelant for half damages.

On the morning of the 6th of February, 1912, about 10 o'clock, the gasoline sloop William M. Brittain was in collision with the steam tug John I. Clark, in the waters of the Elizabeth river, in front of the northernmost pier of the Norfolk & Western Railway at Lambert's Point, Norfolk, Va. The Brittain was 44 feet in length, 13 feet in breadth, 3 feet in depth, and about 10 tons burden, loaded with 15 tons of guano, having a small oyster batteau in tow, and was passing down the Elizabeth river from Norfolk to Chuckatuck creek. The Clark was 62 feet in length, 15½ feet in breadth, 6½ feet in depth, and about 50 tons burden, used as a water boat, and was coming out of the slip to the northward of the northernmost pier; the slip being about 125 feet wide. The collision occurred immediately in front of the pier, some 80 to 100 feet out in the channel; the tug striking the sloop on the starboard side slightly forward of amidships, causing it to sink at once.

The contentions of the parties, respectively, are: On the part of the libelant —that the sloop was in command of a competent master and crew, fully equipped and supplied, and that the collision occurred alone by the carelessness of the navigators of the tug, and without negligence or fault on its part; that the tug failed to give proper signals of its departure from the slip, and was running at a dangerously high rate of speed, and failed to stop and reverse; for her failure to keep an efficient lookout, and otherwise to so navigate as to avoid a collision. On the part of the tug—that she was in every respect properly manned and equipped, that she gave proper signals when departing from the slip, that the sloop approached at a rapid rate of speed in too close proximity to the end of the piers, and that the tug's navigators, upon observing danger of collision, immediately reversed her engines, and did everything on her part that could be done in order to avoid the collision.

John Upton and John W. Oast, Jr., both of Norfolk, Va., for libelant.

Hughes & Vandeventer, of Norfolk, Va., for respondent.

WADDILL, District Judge (after stating the facts as above). Without going into a general discussion of the several faults alleged by the respective parties one against the other, as accounting for the collision, the conclusion reached by the court is that, having due regard to all of the facts and circumstances of the case, including especially the nearness with which the sloop was navigating to the piers, the width of the slip out of which the tug came, the distance the tug could have seen and did see the sloop, the condition of the weather, the tide at the time, the size of the two crafts, and the speed at which they were respectively navigating, there was no reason why any collision should have taken place, had the navigation of either vessel been reasonably and prudently conducted in accordance with the rules governing them. The sloop, whether proceeding within 75 or 125 feet of the piers, as variously estimated by witnesses, was passing within sufficiently close proximity to a manifest place of danger as to call for the exercise of special care and caution, as well for its

own protection as for that of others lawfully using the waters, and particularly those liable to come out of the slips of the piers of the Norfolk & Western Railroad, bordering the eastern line of the channel for some distance. This it utterly failed to do. It is true the sloop's master testifies that, upon discovering the tug, he starboarded with a view of going further to port and from the tug, and that he was able to change his course but little, because of the swell from a passing steamer. This latter part of his statement is not borne out by the other testimony in the case, nor is his version supported by the only other person who was on the sloop and not called as a witness. While it is not probable, having regard to the heavily laden condition of the sloop, that much change could have been made in the course of its headway after the presence of the tug was observed, still every effort should have been made to that end, and the proof should have shown the fact, had it been true; and, moreover, the deckhand, in passing this place of danger, should have been in a position to look out, and be of service, instead of in the cabin, where it is claimed he was, though it may be that his presence on deck would not have materially changed conditions.

On the part of the tug, whether it be that she was proceeding at the speed she claimed of some 3½ miles an hour, or something faster, or whether she gave the signal indicating her purpose to pass out of the slip just when she says she did, or not, is utterly immaterial, since she clearly saw, and could have seen, the sloop passing, and in a position of apparent danger, in time to have avoided her, by the exercise of reasonable prudence on her part. She confessedly saw the sloop 200 feet away, and might have seen it considerably further off, and there was no real reason why she should not have avoided running into it. The tug evidently proceeded upon the theory that the vessels were on crossing courses, and that the sloop, having the tug on its starboard, was charged with the duty of keeping out of the way, and that she would do so. Assuming that this rule applies, under the circumstances the tug should not have taken the risk it did, having due regard to the size of the two vessels, their locations, and the positions in which they respectively were. On the contrary, the "special circumstance" or "general prudential" rule should have governed the tug's navigation. The paramount duty imposed upon vessels in close proximity to each other, and particularly in waters like those at the scene of this accident, is to avoid the risk of collision, and for failure so to do reliance cannot be had on the ordinary rules of navigation to avoid responsibility. Moreover, it is not claimed by the tug that upon reversing its engines it gave the appropriate signals required by the rules of navigation; and it will not do to say they would have availed no purpose, as it cannot be said how the sloop would have navigated, had it been properly warned of imminent danger.

It follows, from what has been said, that the collision occurred as the result of the negligence of both vessels, and that the damages arising therefrom should be divided between them, and a decree to that end will be entered when presented.